IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **KANTIBHAI SANKABHAI PATEL**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 25-3399-KSM** |
| **U.S. CITIZENSHIP AND IMMIGRATION SERVICES**, et al., | |
| Defendants. | |

**MEMORANDUM**

**Marston, J.**                                                                                          **June 3, 2026**

Plaintiff Kantibhai Sankabhai Patel, a citizen of India and current resident of

Warminster, Pennsylvania, entered the United States on a P-3 Artist/Performer Visa on May 14,

1998.  Upon entry, Plaintiff used an imposter passport and visa which allegedly bore a real

photo of Plaintiff and a false name.  After living in the United States continuously for several

decades, Plaintiff sought to adjust his status to a lawful permanent resident through his United

States citizen adult son.  The United States Citizenship & Immigration Services ("USCIS")

denied his I-485 petition,[1] asserting that Plaintiff is ineligible under § 212 of the Immigration

and Nationality Act ("INA").  In response, Plaintiff filed the instant action pursuant to the

Administrative Procedure Act ("APA") and the *Accardi* doctrine against USCIS, Angelica

---

[1] When an applicant's I-485 petition is granted to adjust their status to a "legal permanent resident" they become "green card" holders.  Office of Homeland Security Statistics, *Lawful Permanent Residents*, DEP'T OF HOMELAND SEC., https://ohss.dhs.gov/topics/immigration/lawful-permanent-residents (last visited June 3, 2026).

Alfonso-Royals[2], and Caroline Rouxel in their official capacities at USCIS (collectively, USCIS or Defendants).  Plaintiff asks the Court to:  (1) set aside USCIS's denial of Plaintiff's I-485 Application; (2) declare it unlawful for USCIS to fail to consider all of the evidence he provided with the application and in his responsive filing; and (3) compel USCIS to reopen his I-485 application and re-adjudicate it in a manner that he believes comports with the "United States Constitution, APA, INA, USCIS policy, and governing regulations."  (Doc. No. 1 at 13.) Defendants move to dismiss both of Plaintiff's claims for lack of subject matter jurisdiction, which Plaintiff opposes.  (Doc. Nos. 8, 12.)   For the following reasons, the motion to dismiss is granted.

## I.    FACTUAL BACKGROUND

Plaintiff alleges that he entered the United States from India in May 1998 using an Indian passport and a P-3 Visa that bore his true photograph with the false name:  "Jayantilal Sankalchand Patel."  (Doc. No. 1 at 4.)  Plaintiff claims that he was inspected and allowed entry after presenting both the imposter Indian passport and a fraudulent visa.  (*Id.* at 4.)  Plaintiff currently resides in Warminster, Pennsylvania.  (*Id*. at 3.)

Plaintiff is also the beneficiary of a Form I-130, Petition for Alien Relative, which was filed on his behalf by his son, who is a United States citizen, and which was approved on April 17, 2019.[3]  (Doc. No. 1 at 5.)  On November 10, 2023, Plaintiff filed a Form I-485, seeking to

---

[2] Angelica Alfonso-Royals is the Acting Director of USCIS and Caroline L. Rouxel is the Field Office Director for the San Fernando Valley Field Office of USCIS.  Plaintiff sued both individuals in their official capacities.  (Doc. No. 1.)

[3] Family sponsorship of an immediate relative such as a spouse, parent, sibling, or adult child is a pathway towards an adjustment of status to a legal permanent resident.  8 U.S.C. § 1255(j).  I-130 petitions may be filed by United States citizens, nationals, or legal permanent residents to establish their qualifying familial relationship with an eligible alien resident who is currently residing in the United States or abroad.  United States Citizenship and Immigr. Servs., *I-130, Petition for Alien Relative*, USCIS, https://www.uscis.gov/i-130 (last visited June 3, 2026).

become a lawful permanent resident.  In connection with his I-485 application, he submitted

evidence of his entry into the United States, including a sworn statement, a copy of the imposter

Indian passport, I-94 record of entry, and U.S. visa bearing his photograph under a different

name.  (*Id*.)  In connection with his I-485 application, Plaintiff also filed a Form I-601,

Application for Waiver of Grounds of Inadmissibility.[4]  (*Id*.)

On April 11, 2025, Plaintiff received a Notice of Intent to Deny ("NOID") from the San

Fernando Field Office of USCIS.  (*Id*. at 5.)  The NOID noted in pertinent part:

> you claimed that you were issued a P-3 visa and entered the United
> States on May 4, 1998, as an imposter of Jayantilal Sankalchand
> Patel . . . .  In support of this claim you submitted copies of a P-3
> visa, Indian passport identification page, and I-94 all bearing this
> identity. You have not established that you were lawfully admitted
> and inspected as Jayantilal Sankalchand Patel. There is no
> information, biometric or otherwise, which confirms the fact that
> you entered the United States under this false identity. You have not
> provided any new evidence in this application that meets the
> preponderance of the evidence that you were lawfully admitted and
> inspected or paroled. Please provide evidence that you were lawfully
> admitted and inspected or paroled.

(*Id.* at 6.)  On May 12, 2025, Plaintiff filed a timely response where he enclosed evidence that

included:  (1) a  polygraph examination report, showing there was "No Deception Indicated"

when Plaintiff was asked about entering the United States with a fake passport in 1998; (2) the

resume of Mark Holtsmaster, who conducted the polygraph report; (3) a facial recognition

---

[4] On Plaintiff's Form I-601 waiver application, under Item Number 40, he provided a statement describing what he believes made his entry inadmissible:

> I was not able to obtain a U.S. visa under my own name so I obtained a
> passport bearing my true photo but under a different name. I then asked a
> travel agency to help me obtain a U.S. visa. The agency provided
> documents showing that I was a member of a musical group and I obtained
> a P-3 visa. I was desperate to leave India so I can support my wife and four
> children. Please see my complete statement.

(Doc. No. 1 at 5.)

3

examination report conducted by the FACE Center of Excellence, comparing the biometric photographs showed in Plaintiff's relevant documents and present images; and (4) the resumes of Lora S. Sims and Steven Lee Johnson, the facial recognition experts that produced the facial recognition examination report and analysis. (*Id.*)

In a Notice of Decision dated June 9, 2025, USCIS denied Plaintiff's I-485 Application. (*Id.* at 7.) The Notice stated that Plaintiff responded to the NOID by submitting the following evidence: "[a] brief from your attorney; and [r]esults from a polygraph examination." (*Id.*) The Notice concluded that Plaintiff failed to establish by a preponderance of the evidence that he was lawfully admitted and inspected under the different name, Jayantilal Sankalchand Patel, because Plaintiff failed to provide the original imposter passport and visa and failed to provide biometric information to confirm that he entered the United States under a false identity. (*Id.*) The Notice also stated that the polygraph examination is an insufficient response to the NOID. (*Id.* at 8.)

## II.   PROCEDURAL HISTORY

On July 2, 2025, Plaintiff filed his Complaint seeking a declaratory judgment that the adjudication of Plaintiff's I-495 application was arbitrary, capricious, and contrary to law. (Doc. No. 1 at 4.) Plaintiff challenges the Notice of Decision under the APA and *Accardi* doctrine (Counts I and II). In Count I, Plaintiff asserts Defendants' denial of his I-485 without considering all of the evidence provided with his application was arbitrary, capricious, and an abuse of discretion in violation of the APA. (Doc. No. 1 at 13.) In Count II, Plaintiff avers that in failing to consider all the evidence Plaintiff submitted to USCIS to prove his lawful admission and continuous residency into the United States in 1998, Defendants violated the

agency's own promulgated policies, which he asserts is a violation of the *Accardi* doctrine. (*Id.* at 12.)

Specifically, Plaintiff asserts that neither the NOID nor the Notice of Decision indicate what "biometric information" he could have submitted or how he would have access to this information. (*Id.* at 8.) He avers that "[i]f any agency possessed the resources to verify Plaintiff's entry through biometric data, it would be USCIS. The agency's refusal to consult its own records while faulting Plaintiff for lacking original documents abdicates their institutional role." (*Id.*) Plaintiff alleges that he satisfied the preponderance of the evidence standard for USCIS to believe that his manner of entry occurred. (*Id.*)

Shortly after Plaintiff filed the Complaint, on August 8, 2025, Defendants placed Plaintiff in removal proceedings pursuant to INA § 212(a)(6)(A)(i). (*See* Doc. No. 8-2.) On September 19, 2025, Defendants moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. No. 8.) On October, 17, 2025, Plaintiff opposed Defendants' motion. (Doc. No. 12.) As this matter is fully briefed, it is ripe for resolution.[5]

## III.    LEGAL STANDARD

Federal Rules of Civil Procedure 12(b)(1) governs challenges to a complaint for lack of subject matter jurisdiction. *Williams v. Litton Loan Servicing*, No. 16cv5301, 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018) (quotation marks omitted). A motion brought pursuant to this Rule may be treated as "either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Here,

---

[5] Because neither party moved for oral argument, the Court decides this motion on the papers. *See* L. Civ. R. 7.1(f) ("Any interested party may request oral argument on a motion. The court may dispose of a motion without oral argument.").

Defendants raise a facial challenge, meaning they "contest[] the sufficiency of the complaint because of a defect on its face," and in deciding such a motion, the court considers only the "allegations in the complaint, along with documents referenced therein, in the light most favorable to the nonmoving party." *Williams*, 2018 WL 6600097, at *5 (quotation marks omitted).

## IV.    DISCUSSION

Defendants argue that Plaintiff's Complaint must be dismissed as this Court has been stripped of jurisdiction to decide Plaintiff's APA and *Accardi* doctrine claims. The Court agrees and addresses each claim in turn.

### A.    APA Claim

#### 1.    <u>Legal Background</u>

District courts have "federal-question jurisdiction over APA cases unless such review is precluded by a separate statute." *Melkumov v. Chen*, No. 25cv0001, 2026 WL 1097255 at *3 (D.N.J. Apr. 22, 2026) (citing *Fallas v. Jadou*, Civ. No. 22cv304, 2023 WL 3736326, at *3 (D.N.J. May 31, 2023) (internal quotation marks and citations omitted)). "The INA is one such statute." *Melkumov*, 2026 WL 1097255 at *3; *see also Fallas*, 2023 WL 3736326 at *3 ("[J]udicial review of agency action is not available under the APA where such review is limited by another statute—here, the INA."). As applicable in the instant action, "[s]ection 1255 of the INA provides a way for noncitizens already admitted or paroled into the United States on a temporary basis to adjust their status to that of a legal permanent resident." *Abuzeid v. Mayorkas*, 62 F.4th 578, 580 (D.C. Cir. 2023) (discussing 8 U.S.C. § 1255); *see also Geda v. Dir. U.S. Citizenship & Immgr. Servs.*, 126 F.4th 835, 843 (3d Cir. 2025). Section 1255 provides a

pathway for noncitizens already admitted or paroled into the United States on a temporary basis,[6]

such as on a P-3 Visa[7], to adjust their status to that of a legal permanent resident.  *See* 8 U.S.C.

§ 1255(a).  An applicant for adjustment of status must show that he meets three criteria: "(1) [he

has made] an application for such adjustment, (2) [he] is eligible to receive an immigrant visa and

is admissible to the United States for permanent residence, and (3) an immigrant visa is

immediately available to him at the time his application is filed."  *Id.*  However, "[e]ven if a

---

[6] Noncitizens may be ineligible to receive a visa and therefore inadmissible for permanent residence for various reasons, including entering the country without being properly admitted or paroled under § 212 of the INA:

> (6) (A) Aliens present without admission or parole
>
> (i) In general: An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

8 U.S.C. §1182(6)(A)(i).  Formal inspection to be lawfully admitted into the United States requires a noncitizen to present any and all required documentation, establish they are not subject to removal under existing law, and be admitted by a government officer.  8 U.S.C. § 1101(a)(13)(A).  There are limited exceptions to entrance without admission or parole, which apply only to battered women and children.  8 U.S.C. § 1182(6)(A)(ii).

[7] Plaintiff allegedly entered the United States on a P-3 Visa for Artists or Entertainers Coming to Be Part of a Culturally Unique Program, which provides:

> (P) [A]n alien having a foreign residence which the alien has no intention of abandoning  who-- …
>
> (iii)
>
>> (I)    performs as an artist or entertainer, individually or as part of a group, or is an integral part of the performance of such a group, and
>>
>> (II)   seeks to enter the United States temporarily and solely to perform, teach, or coach as such an artist or entertainer or with such a group under a commercial or noncommercial program that is culturally unique; …

8 U.S.C. § 1101(a)(15)(P)(iii).

noncitizen demonstrates that he is eligible for adjustment to permanent-resident status, the requested relief is not guaranteed." *Abuzeid*, 62 F. 4th at 581 (citing *INS v. St. Cyr*, 533 U.S. 289, 307 (2001); and *Randall v. Meese*, 854 F.2d 473, 47880 (D.C. Cir. 1988)).  The Secretary of Homeland Security, through USCIS, has *discretion* to grant or refuse the requested status.  *Id*.; *see also St. Cyr*, 533 U.S. at 308 (determining that a decision to grant discretionary relief to an eligible applicant is "not a matter of right under any circumstances, but rather is in all cases a matter of grace."); *Geda*, 126 F.4th at 843 ("Section 1255(a) is a classic grant of discretion because it provides the Secretary discretion over not only the final decision but the entire process for reaching that decision.").

Through 8 U.S.C. § 1252(a)(2)(B)(i), the INA limits the ability of federal courts to review § 1255 agency decisions.  *See Melkumov*, 2026 WL 1097255 at *3.  "Section 1252(a)(2)(B)(i) of the INA pertains to '[d]enials of discretionary relief.' " *Abuzeid*, 62 F.4th at 581 (quoting 8 U.S.C. § 1252(a)(2)(B)(i)).  That jurisdiction-stripping provision states:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review — (i) *any judgment* regarding the granting of relief under section . . . 1255 of this title . . . .

8 U.S.C. § 1252(a)(2)(B)(i) (emphasis added).  This provision strips federal courts of jurisdiction to review "any judgment" related to adjustment of status under § 1255, subject to a limited exception.  *See Melkumov*, 2026 WL 1097255 at *3 (citing *Abuzeid*, 62 F.4th at 581).  The limited exception to § 1252(a)(2)(B)(i), provided in subparagraph (D), states:

> Nothing in subparagraph (B) . . . or any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).  "This exception, by its own terms, gives jurisdiction to *circuit* rather than district courts, 'upon a petition for review.'"  *Melkumov*, 2026 WL 1097255 at *3 (emphasis added).  And even then, only in the removal context.  *See Patel v. Garland,* 596 U.S. 328, 345 (2022) ("[S]ubparagraph (D) preserves review of legal and constitutional questions only when raised in a petition for review of a final order of removal."); *Abuzeid,* 62 F.4th at 581 (discussing "an exception that allows review of 'constitutional claims or questions of law' made in *removal proceedings*" (emphasis added)).

Foundationally, Section 1252(a)(2)(B)(i) bars district court review of § 1255 adjustment of status decisions *regardless* of the nature of the challenge.  *See Melkumov*, 2026 WL 1097255 at *4.  While this provision of the INA is listed under the header "[d]enials of discretionary relief," in *Patel v. Garland*, the Supreme Court held that the statutory bar set by § 1252(a)(2)(B)(i) "'does not restrict itself to certain kinds of decisions.  Rather, it prohibits review of *any* judgment *regarding* the granting of relief under §1255."  596 U.S. 328, 338 (2022) (emphasis in original).  As the Supreme Court in *Patel* further explained, "'any' means that the provision applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments[.]"  *Patel,* 596 U.S. at 338 (quoting 8 U.S.C. § 1252(a)(2)(B)(i)).

While *Patel* was decided in the context of a removal proceeding before an immigration judge, several federal courts of appeal, including the Third Circuit, have repeatedly applied *Patel* to bar judicial review of adjustment of status decisions made by USCIS outside of the removal context.[8]  *See e.g.*, *Geda*, 126 F.4th at 845 ("Congress added that clause [§ 1252(a)(2)(B)] to

---

[8] The Court's dicta in *Patel* also suggests this outcome.  *See Patel*, 596 U.S. at 335 ("[F]oreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief. . . . So it would be difficult to maintain that [precluding review of all USCIS denials of discretionary relief outside of the removal context] conflicts with the statutory structure.")

confirm that, despite the section's title, § 1252(a)(2)(B)'s jurisdiction limitation applies to challenges arising outside the context of removal proceedings. . . . The Supreme Court suggested the same in *Patel*, 596 U.S. at 346, 142 S.Ct. 1614 ('[F]oreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief.').").[9]

And several district courts in the Third Circuit have similarly dismissed adjustment of status cases brought pursuant to the APA for lack of subject matter jurisdiction. *See e.g.*, *Vardanyan v. Jordan*, No. 24cv10393, 2025 WL 2253237, at *1 (D.N.J. Aug. 6, 2026) ("[A] plain-text approach to this 'jurisdiction-stripping' portion of the Immigration and Nationality Act, [§] 1252(a)(2)(B)(i), leads to the conclusion that the statute does . . . take away jurisdiction over adjustment of status claims."); *Banerjee v. Jaddou*, No. 22cv4664, 2023 WL 8068092 at *6 (D.N.J. Nov. 21, 2023) (holding that judicial review under the APA does not serve as a "workaround" to [§] 1252(a)(2)(B)(i)'s statutory bar); *Fallas v. Jadou*, No. 22cv304, 2023 WL 3736326, at *5 (D.N.J. May 31, 2023) (holding that the court did not have subject matter jurisdiction to hear an APA claim regarding petitioner's adjustment of status decision); *Melkumov*, 2026 WL 1097255 at *5 (granting defendant's motion to dismiss for lack of subject-

---

[9] *Abuzeid,* 62 F.4th at 578 ("We recognize that our interpretation of § 1252(a)(2)(B)(i) leaves no path for judicial review of denials of adjustment of status by USCIS.  That result is dictated by the plain meaning of the statute and by the reasoning of *Patel*."); *Xia v. Bondi*, 137 F.4th 85, 91 (2d. Cir. 2025) ("Congress's clear directive that no federal court may review a denial of an adjustment application under § 1255, even if it occurs outside removal proceedings, necessarily applies to decisions by USCIS."); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1029 (7th Cir. 2023) ("While *Patel* does not resolve the question presented in this appeal, its reasoning supports the conclusion that judicial review is unavailable. . . . [T]he plain language of § 1252(a)(2)(B)(i) . . . strips us of jurisdiction to review denials of relief by USCIS under § 1255."); *Herrera v. Garland*, No. 21cv7052, 2022 WL 17101156, at *1 (9th Cir. Nov. 22, 2022) (affirming the district court's denial of a USCIS application for adjustment of status for lack of jurisdiction).  *But see Nakka v. U.S. Citizenship and Immigr. Servs.*, 111 F.4th 995, 1009 (9th Cir. 2024) (holding that § 1252(a)(2)(B)(i)'s jurisdictional bar does not strip jurisdiction for federal district courts to hear collateral challenges to generally applicable agency policies or procedures post-*Patel*).

matter jurisdiction over Plaintiff's APA challenge to his denial of status application pursuant to § 1255).  As explained below, we find these post-*Patel* decisions persuasive and join in finding that APA review is not available for adjustment of status decisions due to § 1252(a)(2)(B)(i)'s expansive statutory bar on judicial review.

### 2.    Application

Defendants denied Plaintiff's I-485 adjustment of status application pursuant to 8 U.S.C. § 1255.  (Doc. No. 1 at 16. ("You have not established that you are eligible for adjustment under [§ 1255]. Therefore, we must deny your Form I-485.").).  Plaintiff subsequently filed this Complaint claiming that Defendants "failed to consider all the evidence provided with the application and in the responsive filing after receipt of the NOID." (*Id*. at 10.)  He avers that "[t]he decision [] failed to provide sufficient analysis for a supervising court to review" and that "USCIS's policy in adjudicating cases where the applicant entered using a fraudulent passport is highly inconsistent and, at best, a 'moving target.'" (*Id.* at 11.)  As such, Plaintiff argues that his denial was "arbitrary and capricious, not in accordance with law, and constitutes an abuse of discretion" under the APA.  (*Id.*)

Defendants' motion to dismiss argues that 8 U.S.C. § 1252(a)(2)(B)(i) bars judicial review of USCIS's decision to deny Plaintiff's I-485 application.  (Doc. No. 8 at 12.)  In response, Plaintiff asserts that 8 U.S.C. § 1252(a)(2)(B)(i) applies to final discretionary judgments, while USCIS's failure to follow its own policies and nondiscretionary eligibility determinations remains subject to judicial review.  (Doc. No. 12 at 8.)

The Court agrees with Defendants.  Plainly, *Patel* bars Plaintiff's claim.  In *Patel,* the Supreme Court "explicitly rejected the argument that the word 'judgment' refers exclusively to a 'discretionary decision' that is 'subjective or evaluative,'" stating that "'[a] judgment does not

11

necessarily involve discretion, nor does context indicate that only discretionary judgments are covered by § 1252(a)(2)(B)(i).'" *Fallas*, 2023 WL 3736326, at \*3 (quoting *Patel*, 596 U.S. at 336–37.)  Plaintiff asks the Court to read a carve-out of *Patel* that does not exist.

In an attempt to save his claim, Plaintiff argues that following *Patel*, "factual determinations may remain unreviewable (as they are judgments denying discretionary relief), but an application of a legal standard to undisputed or established facts can be reviewed."  (Doc. No. 12 at 9–10.)  He cites *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024) (asserting that whether an applicant demonstrated "exceptional and extremely unusual hardship" for establishing eligibility for cancellation of removal under the INA constitutes a mixed question of law and fact), and *Sanchez v. Att'y Gen. United States*, 147 F.4th 348, 354 (3d Cir. 2025) (holding that USCIS properly applied a nonimmigrant applicant's facts to the "good moral character" standard articulated in 8 U.S.C. § 1229(b)(1) for cancellation of removal) as support for his argument.

However, unlike the Plaintiffs in *Wilkinson* and *Sanchez*, here, Plaintiff's Complaint does not point to what specific legal standard USCIS violated.  Rather, he broadly asserts that "[t]he decision denying the I-485 application failed to consider all the evidence provided with the application and in the responsive filing after receipt of the NOID."  (Doc. No. 1 at 10.) The Third Circuit has held such a decision is not subject to judicial review.  *See Da Silva v. Att'y Gen. United States*, No. 22-2158, 2023 WL 3993013 at \*1 (3d Cir. June 14, 2023) (determining that "[the court] lack[s] jurisdiction to review facts found as part of discretionary relief proceedings" and holding that the court did not have jurisdiction over plaintiff's claim that USCIS wrongly denied her adjustment of status petition in determining that she willfully misrepresented a material fact on her application).

Plaintiff's reliance on the Third Circuit's pre-*Patel* 2005 decision in *Pinho v. Gonzales*, 423 F.3d 193, 203 (3d. Cir. 2005) is similarly unpersuasive. *Pinho* held that § 1252(a)(2)(B)(i)'s judicial bar does not apply to nondiscretionary decisions, and in dicta, the Court wrote "[d]etermination of *eligibility* for adjustment of status—unlike the *granting* of adjustment itself—is a purely legal question and does not implicate agency discretion."). Plaintiff asserts, incorrectly, that *Patel* does "not disturb this distinction." (Doc. No. 12 at 8.) But "as *Patel* makes clear, Section 1252(a)(2)(B)(i)'s judicial bar reaches *beyond* just discretionary decisions." *Fallas*, 2023 WL 3736326, at *4 (rejecting plaintiff's reliance on *Pinho* and describing Plaintiff's attempt to confine *Patel*'s holding to adjustment of immigration status decisions made only by immigration judges as "unconvincing"); *see also Melkumov,* 2026 WL 1097255 at *5, n.5 (calling plaintiff's reliance on *Pinho* "unavailing" and rejecting plaintiff's reliance on its holding); *Fernandes v. Miller*, No. 22cv12355, 2024 WL 1424171, at *3, n.2 (E.D. Mich. Jan. 31, 2023) ("To the extent [*Pinho*] support[s] the argument that eligibility determinations, unlike a final grant or denial of relief, are reviewable, [*Pinho* has] been superseded by *Patel*.") And dicta in *Patel* itself suggests that *Pinho* is no longer good law, writing that "[t]he reviewability of such decisions is not before us, and we do not decide it. But it is possible that Congress did, in fact, intend to close that door." *Patel*, 596 U.S. at 345. (Doc. No. 13 at 1.)

Ultimately, whether Plaintiff classifies his APA claim as one challenging the law or the nature of the fact gathering that led to his I-485 application denial,[10] this Court does not have jurisdiction. We join the "chorus of cases after *Patel* that have held that, *regardless of the type*

---

[10] In his Complaint, Plaintiff describes his claim with the following descriptors: "APA – USCIS Adjustment of Status Arbitrary Denial – Immigration" and an "APA/arbitrary and capricious denial of benefit application." (Doc. No. 1-3 at 1; Doc. No. 1-2 at 1.)

13

*of challenge*, federal district courts may not review USCIS adjustment of status decisions." *Melkumov*, 2026 WL 1097255 at \*5 (emphasis added) (collecting cases).

The Court also agrees with Defendants that "[t]he fact that USCIS's denial of Plaintiff's I-485 application occurred *before* Plaintiff was placed in removal proceedings does not affect or limit 8 U.S.C. § 1252's application or the inevitable outcome here".[11]  (Doc. No. 8 at 16.)  The plain language in § 1252(a)(2)(B)(i) provides that it applies "*regardless* of whether the judgment, decision, or action is made *in removal proceedings*."  8 U.S.C. § 1252(a)(2)(B) (emphasis added).[12]

As such, the Court finds "that the plain language of Section 1252(a)(2)(B)(i) precludes judicial review of judgments 'regardless of whether the judgment . . . is made in removal proceedings,' [and] together with the Supreme Court's holding in *Patel*, compels the conclusion that the INA's jurisdictional bar is not limited to decisions made only in removal proceedings."[13]

---

[11] Plaintiff asserts that his recently commenced removal proceedings do not strip the Court of jurisdiction to hear this case, citing pre-*Patel* case, *Jie Fang v. Dir. U.S. Immigr.& Customs Enf't.*, 935 F.3d 172 (3d Cir. 2019).  (Doc No. 12 at 11.)  In *Jie Fang*, the Third Circuit held that final agency orders are reviewable under the APA when "the agency offer[s] no further procedures that [the petitioner can] invoke to have his claim of statutory eligibility heard."  *Jie Fang*, 935 F.3d at 181 (citing *Pinho,* 423 F.3d at 200).  Here, unlike the plaintiffs in *Jie Fang*, further channels of review for Plaintiff were explicitly laid out in the June 9, 2025, Notice of Decision Letter that Plaintiff received prior to initiating this lawsuit.  (Doc. No. 1 at 16.)  That letter stated that Plaintiff could "file a motion to reopen or a motion to reconsider using a Form I-290B, Notice of Appeal or Motion . . . within 30 days of the date of this decision [if served in person] . . . or 33 days [if served by mail].  (*Id*.)  Plaintiff's Complaint does not provide any detail on whether he pursued these avenues to exhaust all administrative remedies available to him.  In addition, *Jie Fang* relies heavily on dicta from pre-*Patel* case, *Pinho*, which as stated above, we find unpersuasive.

[12] And indeed, "[p]ost-*Patel*, numerous district [and circuit] courts have found that they lack jurisdiction to review USCIS's denials of plaintiffs' Section 1255 applications for adjustment of status, *outside of the removal context*."  *Moncada v. Mayorkas*, No. 20cv11561, 2023 WL 6174422, at \*9 (D. Mass. Aug. 11, 2023) (emphasis added) (collecting cases).

[13] And "where the INA includes a jurisdictional carveout for questions of law, it only does so for *circuit courts* "upon a petition for review," and only in the removal context.  *Patel*, 596 U.S. at 345–46; *see also Melkumov*, 2026 WL 1097255 at \*5.

14

*Banerjee*, No. 22cv4664, 2023 WL 8068092 at *5.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's APA claim for lack of subject-matter jurisdiction.

### B.       The *Accardi* Doctrine

#### 1.       Legal Background

"Under the *Accardi* doctrine, federal agencies must follow their own binding regulations and formally established procedures, even if those procedures provide greater rights than required by statute."  *N- N- v. McShane*, 813 F. Supp. 3d 496, 502 (E.D. Pa. 2025) (citing *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954)).  "Once an agency chooses to promulgate such rules, it must adhere to them to ensure a fair administrative process. The *Accardi* doctrine is limited, however, and may require a showing of prejudice when an agency's failure to follow its regulations does not implicate 'important procedural benefits' impacting individual rights and liberties."  *Id.* (citing *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39, (1970)); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 178–79 (3d Cir. 2010) ("[W]hen an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation.").  In addition, "the *Accardi* doctrine generally does not apply to an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law."  *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (declining to give legal effect to agency's internal manual that had not been promulgated under the APA)).

#### 2.       Application

Here, in Count II of Plaintiff's Complaint—which sets forth his *Accardi* claim—Plaintiff points to broad portions of USCIS's Policy Manual as the guiding documents with which the

15

agency failed to comply in denying his I-485 application. (Doc. No. 1 at 12 (stating that his "denial is for lack of evidence proving admission despite supplementary evidence that meets the burden of proof to prove admission and satisfies the guidance in the USCIS policy manual" and asserting that "Defendants also failed to acknowledge all filed evidence that proves Plaintiff's admission into the United States.").)  In response, Defendants argue that Plaintiff's *Accardi* doctrine claim is facially deficient because he does not point to "any *specific* federal rule or regulation that USCIS allegedly violated in denying Plaintiff's I-485 application."  (Doc. No. 8 at 20.)  Instead, Plaintiff focuses only on *how* he believes Defendants' review of his application was deficient.  The Court agrees with Defendants.  Plaintiff does not cite any specific federal rule or regulation that Defendants allegedly violated in denying his I-485 application.[14]  (*See* Doc. No. 1 at 12.)  *See Campos v. Ammons*, No. 26cv11556, 2026 WL 936088, at *2 (D. Mass. Apr. 7, 2026) ("Plaintiff's [adjustment of status] claim under the *Accardi* doctrine also fails, because he does not identify which DHS or USCIS regulation defendants have allegedly violated.").  As such, the *Accardi* doctrine "does not apply under these circumstances" and Plaintiff's *Accardi* doctrine claim is dismissed.  *Id.*

---

[14] In Count I of Plaintiff's Complaint (APA claim), Plaintiff references USCIS Policy Manual sections that focus on types of evidence, supplemental documentation, and the use of affidavits that he believes are "admissible as evidence." (Doc. No. 1 at 10–11.)  These sections, however, do not create procedural guarantees for applicants, but instead put forth different forms of evidence that *may* be considered by USCIS officers.  Plaintiff also takes issue with the fact that USCIS "did not acknowledge" the Facial Recognition Examination Report that he included in his response to the NOID.  (Doc. No. 1 at 8.)  However, USCIS is not required to specifically cite or reference every piece of evidence it considers before rendering a Notice of Decision ruling on an application for an adjustment of status.  *See USCIS, Policy Manual, About the Policy Manual* (available at https://www.uscis.gov/policymanual) (last visited June 2, 2026) ("[The Manual] does not remove [officers] discretion in making adjudicatory decisions.").  And Plaintiff does not point to any provision in his Complaint that USCIS officers purportedly violated specifically by not reviewing all the evidence he submitted, including the Facial Recognition Examination Report.

## V.     CONCLUSION

In sum, Plaintiff disagrees with the merits of USCIS's decision to deny his I-485

petition, but this Court is not the forum for such a grievance.  "When jurisdiction is lacking, 'the

only function remaining to the court is that of announcing the fact and dismissing the cause.'"

*Geda*, 126 F.4th at 847 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94

(1998)).  For the reasons discussed above, Defendants' motion to dismiss Plaintiff's Complaint

is granted with leave to amend only as to Plaintiff's *Accardi* doctrine claim.[15]  An

accompanying Order follows.

---

[15]  To the extent that Plaintiff believes that he can plausibly state an *Accardi* doctrine claim against Defendants for violation of a regulation—rather than the USCIS Policy Manual—he may file an Amended Complaint by July 6, 2026.  *See Heckman v. Samsung Electronics America, Inc.,* No. 24cv6835, 2026 WL 309484 at *5 (E.D. Pa. Feb. 5, 2026) (Fed. R. Civ. P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires."). A court should grant leave to amend unless there is one or more of: "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Id.* (citing *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017)).  The Court will not grant Plaintiff leave to amend his APA claim because amendment would be futile, given that 8 U.S.C. § 1252(a)(2)(B)(i) bars judicial review of USCIS's decision to deny Plaintiff's I-485 application.